O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROSEMARY RAWLS, Plaintiff,

v.

JO ANNE B. BARNHART, COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION, Defendant.

Case No. CV 03-3492 AN

MEMORANDUM AND ORDER

## I. INTRODUCTION

Pursuant to 42 U.S.C. § 405(g), Plaintiff is seeking judicial review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI, respectively, of the Social Security Act ("Act"). Both parties have consented to proceed before the Magistrate Judge. Pursuant to the Court's Case Management Order, the parties have filed a joint stipulation and request for an order summarily deciding issues concerning remand and/or immediate payment of benefits ("JS").

## II. BACKGROUND

Plaintiff was born on June 3, 1962, and she was 40 years old at the time of the administrative hearing. [Administrative Record ("AR") at 15, 319.] Plaintiff completed

some college and has past relevant work experience as a receptionist. [AR at 15, 48-51.]

Plaintiff filed applications for DIB and SSI on July 31, 2000. [AR at 14, 108-10, 319-21.] Plaintiff claimed that she has been disabled since February 4, 2000, due to headaches, memory loss, a tingling sensation on the left side, and hallucinations. [AR at 15.] Plaintiff's applications were denied at the administrative level. [AR at 73-77, 324-28.] At Plaintiff's request, a hearing was held before an Administrative Law Judge ("ALJ") on May 15, 2002. [AR at 28-68.] On August 22, 2002, the ALJ issued a decision denying Plaintiff's applications for benefits. [AR at 14-23.] When the Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. [AR at 6-7.] Plaintiff then commenced this action for judicial review.

## III. DISCUSSION

### A. Standard of Review

This Court must review the record as a whole and consider adverse as well as supporting evidence. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Commissioner's final decision affirming an ALJ's decision that a claimant is not disabled must be upheld if the ALJ's findings are supported by substantial evidence in the record and the proper legal standards were applied. *See Curry v. Sullivan*, 925 F.2d 1127, 1129 (9th Cir. 1990). The harmless-error rule applies. *Id.* at 1131. "Substantial evidence means more than a mere scintilla, but less than a preponderance." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). It is further defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also*, *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed. 2d 842 (1971). The ALJ is responsible for determining credibility, resolving conflicting testimony, resolving ambiguities, and "is entitled to draw inferences 'logically flowing from the evidence.'" *Andrews*, 53 F.3d at 1039; *Macri v. Chater*, 93 F.3d 540, 543-544 (9th Cir. 1996). Consequently, inferences and conclusions as the ALJ may reasonably draw from the evidence are upheld. *See Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965).

Likewise, an ALJ's findings are upheld where the evidence is susceptible of more than one rational interpretation. *Andrews*, 53 F.3d at 1039-1040.

To collect DIB or SSI benefits, Plaintiff must suffer from a "disability." 42 U.S.C. §§ 423(a)(1)(D); 1382(a). To be disabled within the meaning of the Act, a claimant must suffer from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§423(d)(1)(A); 1382c(a)(3)(A). The impairment must be of "such severity that [the claimant] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B). The claimant has the burden of showing that she or he is disabled. 42 U.S.C. §§ 423(d)(5); 1382c(a)(3)(H)(i) ; *Clem v. Sullivan*, 894 F.2d 328, 330 (9th Cir. 1990).

**B. <u>The Five-Step Sequential Analysis</u>**

The Social Security Regulations use a five-step sequential analysis for making DIB and SSI disability determinations. 20 C.F.R. §§ 404.1520, 416.920. The first step asks whether the claimant is working. The second step asks whether the claimant has a "severe" impairment, which is defined as an impairment which "significantly" -- more than minimally -- limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1521, 416.921; *Bowen v. Yuckert*, 482 U.S. 137, 154, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). However, this step two determination is "'a *de minimis* screening device to dispose of groundless claims.'" *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001) (internal citations omitted). The third step asks whether the claimant has an impairment which meets or equals the criteria of any impairment identified in the appendix to the Social Security Regulations commonly referred to as the "Listings." *Id*.

The fourth and fifth steps require that the ALJ assess the claimant's residual functional capacity ("RFC"). RFC is a determination of a claimant's remaining abilities to perform work. 20 C.F.R. §§ 404.1545, 416.945(a). In determining a claimant's

physical limitations, the ALJ considers the claimant's ability to lift weight, sit-stand, push-pull, etc. 20 C.F.R. §§ 404.1545(b), 416.945(b). Mental, environmental and other limitations such as the ability to see and hear are also part of the RFC determination. 20 C.F.R. §§ 404.1545(c) and (d), 416.945(c) and (d). A claimant's limitations are categorized as either exertional or non-exertional; exertional limitations are those based upon strength considerations alone. *Cooper v. Sullivan*, 880 F.2d 1152, 1156 (9th Cir. 1989). Non-exertional limitations are unrelated to strength and include "mental, sensory, postural, manipulative, and environmental limitations." *Id.* The exertional requirements of work are classified as sedentary, light, medium, heavy and very heavy. 20 C.F.R. §§ 404.1567, 416.967.

Once the RFC is determined, the fourth step asks whether the claimant can perform his or her past relevant work; at this step the claimant also has the burden of proving he or she is unable to perform past relevant work.

At the fifth step in the analysis, the burden shifts to the Commissioner to prove that the claimant, based on his or her age, education, work experience, and residual functional capacity, can perform other substantial and gainful work existing in the regional or national economy. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner can satisfy this fifth step burden by either (1) applying the Medical-Vocational Guidelines (the "Grids") found at 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 200.00-204.00, or (2) taking the testimony of a Vocational Expert ("VE"). *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir. 1988). However, the Commissioner cannot rely upon the Grids and must use a VE where the claimant's non-exertional limitations are 'sufficiently severe' so as to significantly limit the claimant's ability to perform the full range of sedentary, light, or medium work. *Id.*

If the answer to any of the questions in the five-step analysis establishes the claimant is or is not disabled, the evaluation ends. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Bowen v. Yuckert*, 482 U.S. at 140.

In the decision denying benefits, the ALJ determined that Plaintiff had not engaged

in substantial gainful activity since her alleged onset date. [AR at 15.] While the ALJ found that Plaintiff suffers from the severe impairments of migraine headaches and depression, he determined that Plaintiff's impairments did not meet or equal one of the impairments in the Listings. [AR at 16.] The ALJ assessed Plaintiff with an RFC to perform all work, provided the work is not highly complex, does not involve high levels of work pressure or large amounts change, and does not require more than occasional climbing of ladders, ropes or scaffolds or work around unprotected heights and dangerous moving machinery. [AR at 22.] Based on this RFC, the ALJ concluded that Plaintiff was capable of performing her past relevant work as a receptionist. [AR at 22.] **C.**

**Analysis of Disputed Issues**

Plaintiff asserts that: (1) the ALJ erred by failing to give proper consideration to her subjective complaints concerning her daily activities and social functioning; (2) the ALJ erred by failing to give proper weight to her testimony and the opinions of her treating doctors in determining her RFC; and (3) the Appeals Council failed to properly consider new evidence. The Commissioner disagrees.

**1. Plaintiff's Subjective Complaints**

Once a claimant produces objective medical evidence of an underlying impairment which could reasonably be expected to produce some degree of pain or other symptoms, the ALJ may reject subjective symptom testimony only by offering specific, clear and convincing reasons for doing so in the absence of any evidence of malingering. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). If the ALJ finds that a claimant's testimony regarding the degree of pain and limitations is unreliable, the ALJ must "specifically identify what testimony is credible and what testimony undermines the claimant's complaints." *Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 599 (9th Cir. 1999); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). Resolving conflicts in the testimony and determining questions of credibility are functions solely of the Commissioner. *Morgan*, 169 F.3d at 599.

In this case, the ALJ provided specific, clear, and convincing reasons for

discounting Plaintiff's testimony, with citations to the evidence. At the hearing, Plaintiff testified that she needs to sleep two to four hours during the day, four times a week. [AR at 54-56.] She claims that her extreme fatigue is related to a "mini-stroke." [AR at 55.] Plaintiff also testified that she is able to stand and walk for only 30 minutes at a time due to a knee impairment. [AR at 53-54.] Although Plaintiff produced objective medical evidence to support some degree of symptoms, the ALJ cited Plaintiff's tendency to exaggerate her symptoms. [AR at 21.] In particular, the ALJ found that Plaintiff's admitted daily activities were inconsistent with her claim of disability. [AR at 21-22.] While the ability to perform some household activities is not indicative of ability to work, most of Plaintiff's daily activities are done without help and are done more than occasionally. Significantly, Plaintiff testified that she is the primary adult caretaker of her ten year old autistic son. [AR at 21, 46, 229.] She also admitted that she has attended West Los Angeles College periodically since 1999 and has completed 12 courses. [AR at 48-51.] She performs light cooking, laundry, cleaning and grocery shopping. [AR at 21, 140-45, 279.] Thus, the ALJ properly relied on the inconsistencies between Plaintiff's testimony about her extreme limitations and her admissions about things that she is still able to do despite her impairment. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001)( holding that daily activities may be sufficient to discredit a claimant's allegations where the claimant performed those activities "with no significant assistance"); *Light v. Social Security Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)(inconsistencies between testimony and conduct may be considered in weighing a claimant's credibility).

The ALJ also noted that the medical records did not contain objective evidence of some of Plaintiff's claimed impairments. [AR at 21]; *see* 20 C.F.R. §§ 404.1529(c)(2) (explaining that the medical evidence is a relevant factor in determining the severity of the claimant's pain and its disabling effects), 416.929(c)(2) (same). Plaintiff asserts that she suffered a "mini-stroke" in February 2000. [AR at 21, 55, 240, 302.] However, neurological testing and an MRI of Plaintiff's brain were within normal limits and her

treating physician concluded that Plaintiff had not suffered a transient ischemic attack. [AR at 21, 183, 223.] The ALJ also found that there was no objective evidence to show that Plaintiff's claimed knee and back impairments were severe. [AR at 16-21.] In April 2002, Plaintiff complained of right knee pain and back pain after being involved in a motor vehicle accident on February 25, 2002. [AR at 310.] Plaintiff was diagnosed with bilateral patellar femoral syndrome, tight hamstrings, and lumbar strain. [AR at 289.] Radiological studies of Plaintiff's lumbosacral spine and cervical spine were normal. [AR at 314-15.] Plaintiff was prescribed medication and instructed to stretch her hamstrings and strengthen her quadriceps three times a week for six weeks. [AR at 289, 310-13.] The record does not reveal that Plaintiff sought follow up treatment for her knee or back pain.

Further, the ALJ noted inconsistencies in Plaintiff's statements. *Smolen,* 80 F.3d at 1284 (explaining that in determining whether a claimant's testimony regarding the severity of her symptoms is credible, the ALJ may consider ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms and other testimony by the claimant that appears less than candid). While Plaintiff testified to extreme fatigue, she expressly denied experiencing drowsiness when questioned by one of her treating physicians in February 2002. [AR at 54-55, 301.]

The examples cited above constitute specific, clear and convincing reasons for discrediting Plaintiff's testimony and those reasons were supported by substantial evidence. Consequently, Plaintiff's argument that the ALJ improperly considered Plaintiff's subject complaints regarding her daily activities and social functioning is rejected.

**2. <u>Plaintiff's RFC</u>**

Plaintiff contends that the ALJ's assessment of her RFC was not supported by substantial evidence. In particular, Plaintiff asserts that the ALJ improperly rejected the opinions of her treating doctors, Stanley E. Golden, M.D. and Stephen Kierulff, Ph.D.

[JS at 14-16.]

An ALJ may disregard a treating physician's opinion whether or not that opinion is contradicted. *Andrews*, 53 F.3d 1035, 1041 (9th Cir. 1995)(ALJ may credit opinion of nontreating source based on independent clinical findings over treating physician's opinion) (citing *Magallanes*, 881 F.2d at 751). If the treating physician's opinion is contradicted, and the opinion of a non-treating source is based upon independent clinical findings that differ from those of the treating physician, the opinion of the non-treating source may itself be substantial evidence on which the ALJ may rely. *Andrews*, 53 F.3d at 1041. Where, on the other hand, a non-treating source's opinion contradicts that of the treating physician, but is not based on independent clinical findings, or rests on clinical findings also considered by the treating physician, the opinion of the treating physician may be rejected only if the ALJ gives specific, legitimate reasons for doing so that are based on substantial evidence. *Id*.; *Morgan*, 169 F.3d at 600.

Dr. Golden began treating Plaintiff in March 2002. [AR at 329.] In May 2002, Dr. Golden completed a Headache RFC Questionnaire on Plaintiff's behalf. [AR at 316-18.] He reported that Plaintiff suffers migraine headaches two to three times a week and sometimes as frequently as two to three times a day. [AR at 316.] Dr. Golden opined that Plaintiff would require unscheduled, one hour breaks two to three times a week and would be absent from work more than four times a month. [AR at 317A.] Dr. Golden concluded that Plaintiff was incapable of even low stress work. [*Id.*]

In July 2001, Dr. Kierulff conducted a psychological evaluation of Plaintiff. [AR at 240-47.] Dr. Kierulff found that Plaintiff was severely disabled due to depression, anxiety, neuropsychological problems of depression, impulsivity, and hyperactivity. [AR at 247.] Medical records reflect that Dr. Kierulff continued to treat Plaintiff through April 2002. [AR at 261, 290-96.]

The ALJ reviewed the opinions of Dr. Golden and Dr. Kierulff and rejected both of them. [AR at 18-19.] In so doing, the ALJ relied on the findings of consultative psychologist Roger Izzi, Ph.D. [AR at 20-21.] Dr. Izzi conducted a complete

psychological evaluation of Plaintiff in February 2002. [AR at 279-85.] Dr. Izzi diagnosed Plaintiff with anxiety disorder NOS. [AR at 284.] Dr. Izzi concluded that Plaintiff was not limited in her ability to understand, remember, and carry out short, simple instructions and "make judgements on simple work-related decisions." [AR at 286.] Dr. Izzi assessed Plaintiff with a "slight" restriction in the ability to understand, remember and carry out detailed instructions, a "slight" restriction in the ability to interact with the public, supervisors, and co-workers, and a "moderate" restriction in the ability to respond appropriately to work pressures and changes in a routine work setting. [AR at 286-87.] The ALJ was allowed to credit Dr. Izzi's findings over the opinions of Dr. Golden and Dr. Kierulff because Dr. Izzi based his report on independent clinical findings. *See Andrews*, 53 F.3d at 1041 ("[w]here the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the province of the ALJ to resolve the conflict.")

Plaintiff counters that the ALJ's evaluation of Dr. Izzi's opinion was not supported by substantial evidence because he failed to give proper weight to Dr. Izzi's assessment of Plaintiff's work related restrictions. [JS at 15-16; AR at 286-87.] Plaintiff points out that, while Dr. Izzi found that Plaintiff had a "slight" restriction in the ability to interact with co-workers, supervisors, and the public, the ALJ found that Plaintiff had "no" restriction in maintaining social functioning. [AR at 16, 286.] Dr. Izzi's form, however, defined "slight" as "some mild limitations in this area, but the individual can generally function well." [AR at 286.] Because a "mild" restriction in social functioning or daily activities is consistent with a non-severe mental impairment, any inaccuracy in the ALJ's consideration of Dr. Izzi's opinion is inconsequential. 20 C.F.R. 404.1520a(d)(1), 416.920a(d)(1); *see Curry*, 925 F.2d at 1131 (applying the harmless-error rule). Further the ALJ's finding that Plaintiff would be capable of work that did not involve "high levels or work pressure or large amounts of change" sufficiently addressed Dr. Izzi's

finding that Plaintiff was moderately restricted in the ability to respond appropriately to work pressures and changes in a routine work setting. [AR at 22, 287.]

The ALJ also provided specific, legitimate reasons to support rejection of the treating doctors' opinions. *See Lester*, 81 F.3d at 831. For example, the ALJ noted that Dr. Golden's report was not supported by objective evidence. [AR 18]; *see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) (explaining that the ALJ may reject the conclusory opinion of an examining or treating physician if the opinion is unsupported by clinical findings). Indeed, the record contains no progress or chart notes from Dr. Golden, and Plaintiff's MRI and CT scan were negative. [AR at 316A.] The ALJ also noted that Dr. Kierulff's opinion appeared to be based on Plaintiff's subjective complaints, which the ALJ properly discounted. [AR 18-19.] It is well settled that "[a] physician's opinion of disability premised to a large extent upon the claimant's own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted." *Morgan*, 169 F.3d at 602; *Fair v. Bowen*, 885 F.2d 597, 605 (9th Cir. 1989). Thus, the ALJ provided sufficient reasons for rejecting the treating doctors' opinions.

In January 2002, Irena Westmoreland, M.D. conducted a medical/psychiatric consult and assessed Plaintiff with a Global Assessment of Functioning ("GAF") score of 35.[1/] [AR at 304.] In the decision, the ALJ summarized Dr. Westmoreland's medical reports, which showed that Plaintiff's depression, drowsiness and sleep was improving. [AR at 20, 299-304.] Although the ALJ did not specify a reason for rejecting the GAF score, the ALJ had no obligation to do so. *See, e.g.*, *Howard v. Commissioner of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002) (finding that ALJ did not err by failing to reference claimant's GAF scores). The GAF scores were intended to be used to make

---

[1/] A GAF of 31-40 indicates "[s]ome impairment in reality testing or communication ... OR major impairment in several areas, such as work ..., family relations, [or] judgment," while a GAF of 41-50 indicates "[s]erious symptoms ... OR any serious impairment in social or occupational ... functioning." Diagnostic and Statistical Manual of Mental Disorders (DSM-IV) 32 (4th ed. 1994).

treatment decisions. *See* DSM-IV at 32. Neither the Social Security regulations nor case law require an ALJ to determine the extent of an individual's disability based solely on her GAF score. Thus, the ALJ did not err in his consideration of Dr. Westmoreland's opinion. *See Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (the ALJ need only explain why "significant probative evidence has been rejected").

Plaintiff further asserts that the ALJ erred because he did not include any exertional restrictions in her RFC other than limitations against more than occasional climbing of ladders, ropes, scaffolds, and work around unprotected heights and dangerous moving machinery. [JS at 13; AR at 22.] Because the ALJ did not find that Plaintiff had any additional physical limitations, the ALJ did not err by failing to include any additional exertional restrictions in Plaintiff's RFC. [AR at 22, 208]; 20 C.F.R. §§ 404.1545(b), 416.945(b) ("When we assess your physical abilities, we first assess the nature and extent of your physical limitations and then determine your residual functional capacity for work activity on a regular and continuing basis.")

**3. <u>Appeals Council</u>**

Plaintiff next contends that the Appeals Council erred by failing to grant review based on new evidence from Plaintiff's treating physicians.

The Appeals Council will review an ALJ's decision only when it determines, after review of the entire record including the new and material evidence, that the decision is contrary to the weight of the evidence currently in the record. *See* 20 C.F.R. §§ 404.970, 416.1470; *Macri*, 93 F.3d at 544. New evidence is material if there is a "reasonable possibility" that it would have changed the outcome of the administrative proceedings. *Booz v. Secretary of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984).

Before the Appeals Council, Plaintiff submitted the following: letters from Dr. Golden and Dr. Kierulff; medical records from West Gastroenterology Medical Group from April 22, 2002 to July 12, 2002; a colonoscopy report dated August 13, 2002; test results from Marina Laboratory dated June 26, 2002; an endoscopy report and pathology report from the Daniel Freeman Memorial Hospital dated May 3, 2002; and a copy of the

first page of a letter written by Plaintiff's attorney to the Appeals Council. [AR at 329-48.] The Appeals Council considered these exhibits, but determined that they did not provide a basis for changing the ALJ's decision. [AR at 6-8, 329-48.] Plaintiff, however, asserts that the Appeals Council did not properly consider the records from West Gastroenterology Medical Group and the Daniel Freeman Memorial Hospital. [JS at 24-25.] In support of this contention, Plaintiff notes that the Appeals Council only specifically mentioned the letters from Dr. Golden and Plaintiff's counsel in its Order of Appeals Council. [JS at 25; AR at 8.] Plaintiff's claim is without merit. Although the Appeals Council did not individually discuss each piece of evidence, it had no obligation to do so. Further, the records from West Gastroenterology Medical Group and the Daniel Freeman Memorial Hospital New do not establish a "reasonable possibility" that the outcome of the administrative proceedings would have changed. *Booz*, 734 F.2d at 1380. Rather, the medical records from West Gastroenterology Medical Group merely show that Plaintiff was prescribed medication for complaints of gastrointestinal and abdominal pain, nausea, vomiting, and that the Daniel Freeman Memorial Hospital records reflect a diagnosis of marked chronic gastritis and a hiatal hernia and recommendation that Plaintiff begin an anti-reflux regimen. [AR at 331-38, 345-47.] Thus, the Appeals Council did not err by denying review based on submission of this new evidence. See 20 C.F.R. §§ 404.970, 416.1470; *Macri*, 93 F.3d at 544.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## IV. CONCLUSION

Based upon the foregoing, the Court finds the ALJ's determination of non-disability is free of legal error and supported by substantial evidence in the record. Therefore, Plaintiff's request for an order directing the payment of benefits or remanding this case for further proceedings is DENIED, and the Commissioner's request for an order affirming the Commissioner's final decision and dismissing the action is GRANTED. The clerk shall enter judgment, close the file and terminate all pending motions.

DATED: March 7, 2006          /s/ Arthur Nakazato
                                          ARTHUR NAKAZATO
                                      UNITED STATES MAGISTRAT E JUDGE